UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROGER LEISHMAN,<br><br>Plaintiff,<br><br>v.<br><br>WASHINGTON STATE OFFICE OF THE GOVERNOR, ET AL.,<br><br>Defendants. | CASE NO. 2:24-cv-01363-JNW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## 1.  INTRODUCTION

Plaintiff Roger Leishman sued Defendants Washington State Office of the Governor, Attorney General's Office, and Department of Enterprise Services (collectively, "the State") in state court alleging that they violated Title II of the Americans with Disabilities Act (ADA). The State removed the case, and now its motion to dismiss comes before the Court. Dkt. No. 5. After considering the complaint, the briefing, and the relevant law, the Court finds that Leishman has failed to state a plausible claim under Title II of the ADA and that amendment would be futile. Accordingly, the Court DISMISSES this case with prejudice for the reasons explained below.

ORDER - 1

## 2.  JUDICIAL NOTICE

Preliminarily, the State moves for judicial notice, asking the Court to take judicial notice of the pleadings and rulings from Plaintiff's prior, related lawsuits against the State, its agents, and its attorneys. Under Federal Rule of Evidence 201, "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131–32 (9th Cir. 2012). The court "may take judicial notice of undisputed matters of public record . . . including documents on file in federal or state courts." *Harris*, 682 F.3d at 1132. "Moreover, documents not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents." *Id*. The Court finds that the state court materials submitted are subject to judicial notice and thus GRANTS the State's motion.

## 3.  BACKGROUND

**3.1  Pre-litigation facts.**

Leishman worked for the Washington Attorney General's Office (AGO) from July 2015 to June 2016. He is a licensed attorney and represents himself in this action.

Shortly after he began working for the AGO, Leishman was diagnosed with Post-Traumatic Stress Disorder (PTSD). *Leishman v. Wash. Attorney General's Office*, Case No. 2:20-cv-861, Dkt. No. 195 at 2. "His symptoms affected his behavior

ORDER - 2

at work, including his interactions with his coworkers." *Id*. "In late January 2016, Leishman submitted a formal workplace disability accommodation request, but the Attorney General's Office denied his request." *Id*. After that, Leishman filed a formal sexual orientation discrimination complaint, alleging that his supervisor had made homophobic allegations against him and had wrongfully withheld his raise. *Id*. Without explanation, the AGO placed Leishman on home assignment effective immediately. *Id*. at 3. The AGO hired Ogden Murphy Wallace to perform an investigation and subsequently terminated Leishman's employment. *Id*.

After his termination, Leishman submitted request for documents under Washington's Public Records Act and filed complaints against several individuals, including ethics complaints with Executive Director of the Washington Executive Ethics Board, Kathryn Reynolds. *Id*. Reynolds refused to accept the complaints. *Id*.

These employment disputes triggered years of related litigation against the State and its attorneys.

### 3.2    Related litigation: *Leishman I–IV*.

Leishman asserted tort claims based on his sexual orientation discrimination allegations. The parties settled those claims.

Then, in May 2017, Leishman sued Ogden Murphy Wallace and its investigator, Patricia Pearce, in King County Superior Court. *Leishman v. Ogden Murphy Wallace, PLLC*, 479 P.3d 688, 691 (Wash. 2021) (*Leishman I*). In 2021, the Washington State Supreme Court found that Washington's anti-SLAPP statute barred the suit. *Id*. at 695.

ORDER - 3

In April 2020, Leishman filed another lawsuit in King County Superior Court, alleging Washington Law Against Disability ("WLAD") discrimination based on sexual orientation and disability; WLAD retaliation; negligence; negligent infliction of emotional distress; outrage; civil conspiracy under 42 U.S.C. § 1985; constitutional violations under 42 U.S.C. § 1983; and disability discrimination under the Americans with Disabilities Act (ADA). Defendants included the AGO, various AGO agents, and Ogden Murphy Wallace. The case was removed to federal court, where Leishman requested "that the Court authorize Assistant Attorney General Jeffrey Grant, rather than Defendant Janay Ferguson, to speak on behalf of all Defendants during [] discussions of potential motions and other case management issues." *Leishman v. Wash. Attorney General's Office et al.*, Case No. 2:20-cv-00861 (*Leishman II*), Dkt. No. 94 at 2. Leishman asserted that his conversations with Ferguson triggered his PTSD. On September 15, 2021, Judge Jones construed the request as a request for accommodations under the Local Civil Rules and found good cause, given Leishman's mental health concerns, to grant the motion. *Id.* at 3–4. Thus, in September 2021, Grant became the State's point of contact with Leishman, pursuant to a court order issued at Leishman's request. The case was later transferred to this Court, which dismissed Leishman's claims. *Leishman II*, Case No. 2:20-cv-861-JNW, Dkt. Nos. 194; 195.

While *Leishman II* was pending, on June 30, 2020, Leishman filed a mandamus action in state court against Executive Director Reynolds (*Leishman III*); he asserted that Reynolds had a duty to accept his ethics complaints under the Ethics in Public Service Act. Leishman sued Executive Director Reynolds, and that

ORDER - 4

case was transferred to Thurston County Superior Court, where Leishman added a claim under the Public Records Act (PRA) against the Office of the Governor. The Court dismissed Leishman's mandamus claim, but Leishman continued to litigate his PRA claims through trial. (*Leishman IV*). During that litigation, on July 7, 2022, Leishman moved to disqualify Assistant Attorney General Grant under RPC 3.7 and GR 33—the General Rule governing disability accommodation requests in Washington courts. He argued that Grant was a necessary witness under RPC 3.7 and thus could not serve as an attorney on the case. He also argued that disqualifying Grant was a reasonable accommodation under GR 33 because Grant manipulated and gaslit him, which triggered his PTSD. The court denied the motion, and after a bench trial entered judgment for the Governor's Office. That decision is on appeal.

### 3.3    Procedural background: *Leishman V.*

Against this backdrop of extensive prior litigation, Leishman filed this lawsuit in King County Superior Court on April 16, 2024. Dkt. No. 1-4 (*Leishman V*). He named as defendants the Governor's Office, AGO, and DES, as well as six individual attorneys who represent the Defendant agencies. Leishman's initial complaint alleged WLAD disability discrimination in a place of public accommodation, negligence, negligent infliction of emotional distress, outrage, and PRA violations.

The superior court granted Defendants' motion to dismiss in part, dismissing Leishman's claims for outrage, negligent infliction of emotional distress, violations

ORDER - 5

of the WLAD with prejudice. Dkt. No. 1-7 at 139–43. The court transferred the PRA claims on a finding that Thurston County was the proper venue for them.

On July 16, 2024, Leishman moved to amend complaint and to sever claims under CR 42(b). Dkt. No. 1-7 at 292–98. Leishman moved to add two Title II claims against the State Defendants—a disparate treatment claim and a failure-to-accommodate claim. *Id*. at 295. On July 30, 2024, the superior court granted Leishman's motion to amend, which allowed him to file a complaint alleging his Title II claims against the State Defendants. *Id*. at 337–41. The superior court rejected the Defendants' argument that the new claims were barred by claim or issue preclusion and thus that amendment was futile. *Id*. at 338. However, the court "d[id] not preclude Defendants from asserting claim preclusion or issue preclusion in any future motion." *Id*. at 338 n.1.

On August 19, 2024, King County Superior Court entered a partial final judgment under CR 54(b) in Defendants' favor on the WLAD, negligence, negligent infliction of emotional distress, and outrage claims. Dkt. No. 1-7 at 440–42. With no claims remaining against the Attorney Defendants, the superior court ordered that they be terminated as parties in this case. On August 28, 2024, Defendants then removed the case.

### 3.4     The State's alleged wrongful conduct.

Leishman's Title II claims in this lawsuit are based on the State's conduct during the prior litigation. He explains "[b]y the end of 2020, former Assistant Attorney General Grant's . . . handling of communications with Leishman began to

ORDER - 6

cause increasingly serious PTSD symptoms." Dkt. No. 1-2 at 8. "Nevertheless," he claims, "Defendants refused to permit anyone other than former Assistant Attorney General Grant to respond to Leishman's attempts to communicate with State agencies and officers about his concerns . . . ." *Id*. at 8–9. He alleges that Grant: "neglected [his] communications," "failed to follow through on commitments," "blamed [him] for Defendant's neglect," "gave false and conflicting explanations to Leishman," and "obstructed Leishman's attempts to seek redress." *Id*. at 9.

Leishman states that he complained about Grant's behavior to Complex Litigation Division Chief Jeffrey Rupert in early 2024. *Id*. at 20. In response, Rupert reportedly said that Leishman's allegations against Grant were "frivolous." *Id*. Leishman alleges that this characterization—as "frivolous"—poses a "classic example of clinical gaslighting: falsely accusing his victim of engaging in the same type of misconduct the abuser himself is guilty of." *Id*.

Leishman asserts that the State has discriminated against him on the basis of his disability mostly because Grant (and potentially other attorneys working for the State) won't concede that he has a disability and also because Grant failed to communicate with him in a timely and honest fashion. He asserts that this conduct triggers his PTSD, which prevents him from adequately representing himself in court. Leishman also alleges that he "alerted Defendants to his need for accommodation," but they refused to provide reasonable accommodations. *Id*. at 20.[1]

---

[1] The complaint contains mostly factual allegations related to claims Leishman pursued in previous litigation against the State and its privies, like his PRA claim. These allegations are irrelevant to his Title II claims.

ORDER - 7

## 4. DISCUSSION

**4.1  Legal standard.**

The Court will grant a Rule 12(b)(6) motion if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the Court accepts factual allegations pled in the complaint as true and construes them in the light most favorable to the plaintiff. *Lund v. Cowan*, 5 F.4th 964, 968 (9th Cir. 2021).

"When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *Furnace v. Giurbino*, No. 1:11-cv-00012, 2012 WL 3869914, at *1 (E.D. Cal. Sept. 6, 2012) (quoting *United States v. Ritchie*, 342 F.3 d 903, 907 (9th Cir.2003)). "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* (quoting *Ritchie*, 342 F.3d at 908).

ORDER - 8

### 4.2  Title II of the ADA does not apply to adversarial litigation relationships.

As a threshold matter, the Court finds that Leishman's Title II claim fails because the adversarial litigation relationship between Leishman and the State falls outside Title II's scope.

Leishman argues that when state attorneys engage in litigation conduct that allegedly exacerbates his disability, the State violates Title II by failing to consider his needs as an opposing party. Specifically, he contends the State should have assigned different counsel to avoid triggering his PTSD and should have moderated its litigation tactics to protect his mental health during adversarial proceedings. This theory finds no support in the law. Leishman cites no case—and the Court has found none—applying Title II to require a government entity to accommodate the disabilities of adverse litigants *during* litigation.

Title II of the ADA provides that no disabled individual "shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity." 42 U.S.C. § 12132. "To state a prima facie case for a violation of Title II, a plaintiff must show: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Payan v. L.A. Comm. Coll. Dist.*, 11 F.4th 729, 737 (9th Cir. 2021) (citation modified).

ORDER - 9

Thus, to prevail on a Title II claim, "a plaintiff must prove that he or she is a 'qualified individual with a disability.'" *Zimmerman v. Or. DOJ*, 170 F.3d 1169, 1175 (9th Cir. 1999) (quoting 42 U.S.C. § 12132). A plaintiff is not "qualified" unless he "meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* (quoting 42 U.S.C. § 12131(2)).

Even under the broadest interpretation of Title II, litigation defense by a government entity cannot constitute a "service" provided to opposing parties. While the State undoubtedly provides numerous services that benefit the public in a legal or law enforcement setting—including court administration, law enforcement, and regulatory oversight—the zealous representation of the government's own interests in adversarial proceedings serves only the government client, not its opponents. The adversarial system is premised on each party advancing its own interests through independent advocacy. To characterize the State's litigation defense as a "service" to opposing parties miscasts the nature of adversarial proceedings and collapses the essential distinction between a government's role as service provider and its role as litigant.

Recognizing opposing parties as "qualified individuals" entitled to accommodations from the State would create conflicting duties that Title II does not require. An attorney owes undivided loyalty to her client and must zealously advocate within the bounds of the law. Requiring government attorneys to temper their advocacy to accommodate opposing parties' disabilities would compromise this duty and potentially violate ethical obligations to their government clients.

ORDER - 10

Leishman's interpretation would force government entities to choose between effective representation and compliance with disability law, a conflict Congress could not have intended when enacting Title II.

The Ninth Circuit's decision in *Zimmerman v. Oregon Department of Justice* confirms this understanding about Title II's scope. There, the court found that an employee could not bring Title II claims against his government employer because employment creates a fundamentally different relationship than service provision. 170 F.3d at 1175–76. The employee was seeking not to "receive" government services but to modify his working relationship with his employer. As the Ninth Circuit explained, the "action" words in the statute assume a relationship between a public entity, on the one hand, and a member of the public, on the other, where the former provides an output that the latter participates in or receives. *Id*. at 1175.

Leishman's case presents a similar dynamic: he is not seeking to receive litigation defense services but to constrain how the State provides those services to itself during litigation against him. Like the employee in *Zimmerman*, Leishman seeks to alter a non-service relationship—here, the State's litigation defense rather than an employment relationship.

The cases Leishman invoke follow this service-recipient framework. In *Tennessee v. Lane*, disabled plaintiffs sought physical access to courthouse facilities—judicial infrastructure the state provided to litigants and the public. 541 U.S. 509, 513–15 (2004). The plaintiffs were eligible to receive these court services as civil litigants. In *Duvall v. County of Kitsap*, a hearing-impaired plaintiff sought accommodations from court personnel conducting his proceedings—again, services

ORDER - 11

the court system provided to him as a litigant. 260 F.3d 1124, 1129 (9th Cir. 2001). Neither case involved adverse parties seeking to control their opponents' advocacy.

Leishman's interpretation of Title II would create the very conflict *Zimmerman* sought to avoid by forcing government entities to pursue conflicting goals—zealously representing themselves in litigation while at the same time moderating that advocacy to accommodate opposing parties' disabilities.

The proper forum for litigation accommodations is the court system itself, which has inherent authority to manage proceedings fairly. Indeed, Leishman acknowledges that "multiple courts have . . . accommodated his disability," thus ensuring his access to the courts. Dkt. No. 1-2 at 5. This demonstrates that the existing legal framework already provides the protections Leishman seeks through his novel Title II theory.

Because Leishman seeks to modify the State's adversarial litigation conduct rather than to participate in or receive government services, his Title II claims fail as a matter of law.

**4.3    Leishman fails to state a plausible Title II claim.**

Even if Title II could apply to adversarial litigation relationships, Leishman's Title II claims still fail. The elements of a prima facie Title II claim are set forth the above. *See supra* Section 4.2. There are three legal theories of liability that can support a Title II claim: "disparate treatment, disparate impact, or failure to make a reasonable accommodation.'" *Payan*, 11 F.4th at 738 (quoting *Davis v. Shah*, 821

ORDER - 12

F.3d 231, 260 (2d Cir. 2016)). Leishman alleges disparate treatment and failure to accommodate. The Court addresses each in turn.

### 4.3.1 Leishman fails to state a plausible disparate treatment claim.

To state a plausible disparate treatment claim, Leishman must allege the State treated him less favorably than similarly situated, non-disabled persons because of his disability. *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale, Fla.*, 46 F.4th 1268, 1275 (11th Cir. 2022). Leishman advances several theories of disparate treatment, all of which fail to state a plausible claim.

Leishman alleges the State discriminated against him by assigning Grant to represent the State in *Leishman II* and *Leishman IV*. Dkt. No. 1-2 at 2. But Leishman's own allegations defeat this theory, as Leishman requested that Grant serve as the State's communication point person in *Leishman II,* and Judge Jones granted his request as an accommodation. Leishman cannot claim discriminatory assignment of counsel when his pleadings allege that he requested the assignment.

Next, Leishman alleges that the State discriminated against him through its litigation conduct by "neglect[ing] communications," "fail[ing] to follow through on commitments," "blam[ing] [him] for Defendants' neglect," "g[iving] false and conflicting explanations," and "obstructing [his] attempts to seek redress." *Id*. at 9. Leishman also claims discrimination because the State refused to concede certain aspects of his claims, including that he has a disability. These allegations fail to state a plausible disparate treatment claim because Leishman pleads no facts showing the State treats non-disabled opponents differently. Vigorous advocacy—

ORDER - 13

including challenging an opponent's factual and legal assertions—is standard practice against all adversaries. As a litigant, the State has a right to disagree with and refute an opposing party's positions. Leishman's allegations describe ordinary adversarial conduct, not disparate treatment based on disability.

Finally, Leishman claims that the State discriminated against him by refusing to allow anybody except Grant to communicate with him. Dkt. No. 1-2 at 8–9. But other allegations in the complaint contradict this statement. Indeed, Leishman alleges that Grant's supervisor responded to his complaints about Grant's alleged behavior. Contradictory allegations, not to be confused with claims in the alternative, cannot support a plausible discrimination claim.

At bottom, Leishman has failed to state a plausible claim for relief under Title II of the ADA on a disparate treatment theory. He pleads no facts showing that the State treated him differently than it would treat any other adverse litigant, disabled or not.

### 4.3.2   Leishman fails to state a plausible failure-to-accommodate claim.

Even when the State does not engage in disparate treatment, it still may violate Title II of the ADA if it fails to provide reasonable accommodations to a person with a disability. *McGary v. City of Portland*, 386 F.3d 1259, 1267 (9th Cir. 2004). Indeed, "facially neutral policies may violate the ADA when such policies unduly burden disabled persons." *Id*. at 1265. Thus, failure to accommodate claims are "focused on an accommodation based on [the plaintiff's] individualized request

or need." *Payan*, at 11 F. 4th 738. The idea is to provide "meaningful access" to services for all. *See Lonberg v. City of Riverside*, 571 F.3d 846, 851 (9th Cir. 2009).

Leishman asserts that he has sought "two kinds of accommodation: additional time to complete tasks when his Executive Function is impaired by substantial stress or PTSD triggers, and protection from the impact of interactions with individuals whose conduct has caused significant PTSD triggers." Dkt. No. 1-2 at 5. He maintains that these accommodations are necessary to protect his fundamental right of access to the courts. Leishman's allegations fail to state a claim.

Leishman cannot plausibly allege that he lacks meaningful access to the courts. By his own admission, "multiple courts have . . . accommodated his disability, including the Washington Supreme Court, the Western District of Washington, the Washington Court of Appeals, King County Superior Court, and Thurston County Superior Court." Dkt. No. 1-2 at 5. The record confirms this: Leishman has filed multiple lawsuits against the State and its agents, amended his pleadings, litigated through trial and appeal, and regularly appeared and participated in proceedings. As he acknowledges, he has sought and received accommodations from various courts. This extensive litigation history demonstrates meaningful access as a matter of law.

Leishman also fails to allege that he actually requested the accommodations he now claims were wrongfully denied. He alleges he sought "additional time to complete tasks when his Executive Function is impaired" and "protection from the impact of interactions with individuals whose conduct has caused significant PTSD

ORDER - 15

triggers." *Id*. at 5. But his complaint does not plausibly allege that he requested these specific accommodations from the State defendants. Rather, his pleadings show accommodation requests made to courts, not to his litigation adversaries. The State cannot be liable for failing to provide accommodations that were never requested.

Even if Leishman had properly requested accommodations from the State, the accommodations he seeks would fundamentally alter the nature of the adversarial system itself. Requiring the State to restaff a case based on an opponent's psychological reactions to counsel, or to moderate its litigation tactics to avoid triggering opposing parties, would transform adversarial proceedings beyond recognition. Title II requires only "reasonable modifications" that do not "fundamentally alter the nature of the service provided." *Lane*, 541 U.S. at 533. Leishman's requested accommodations don't fall into that category.

The court in *Leishman IV* already considered and rejected Leishman's accommodation request to remove Grant under GR 33, finding that continued representation was appropriate. Leishman cannot circumvent that ruling by recasting his failed accommodation request as a Title II violation.

Finally, Leishman's argument that the State should have extended litigation deadlines to accommodate his disability fails because court deadlines are not within the State's control. Courts, not opposing parties, manage case schedules and procedural deadlines.

In sum, Leishman's allegations do not show that he has been "excluded from participation" in his court proceedings, or that the court's "facilities are inaccessible

ORDER - 16

or unusable to him" because of the State's purported failure to accommodate his PTSD. *See Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 985 (9th Cir. 2014) (internal quotation omitted). Thus, dismissal is appropriate.[2]

### 4.4  The dismissal is with prejudice.

Ordinarily, when a court dismisses a pro se plaintiff's complaint for failure to state a claim, it must grant leave to amend even when no request to amend is made. *Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017). But Leishman is a licensed attorney who has pursued related discrimination claims against the State and its agents and attorneys in three other cases and who has already amended his complaint once in this case. District courts have "particularly broad" discretion in denying amendment when leave to amend has previously been granted. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1117 (9th Cir. 2014) ("[T]he district court's discretion in denying amendment is 'particularly broad' when it has previously given leave to amend.").

Leave to amend may also be denied where amendment would be futile. *Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002). The Court has found that Leishman's legal theories are not viable, and that he has otherwise failed to state a claim. Under these circumstances, leave to amend is denied.

---

[2] The State has raised claim preclusion, issue preclusion, and sovereign immunity arguments. But because the Court dismisses Leishman's claims with prejudice on other grounds, the Court does not address these arguments.

ORDER - 17

## 5. CONCLUSION

Accordingly, the Court GRANTS Defendants' motion to dismiss, Dkt. No. 5, and DISMISSES this case with prejudice. All pending motions are DENIED AS MOOT.

IT IS SO ORDERED.

Dated this 29th day of August, 2025.

_____
Jamal N. Whitehead
United States District Judge

ORDER - 18